**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 19-cv-00288DDD-NYW

Shawn Ornelas, on behalf of himself
and all similarly situated persons,

    Plaintiff,

v.

American Disposal Services of Colorado, Inc.,

    Defendant.

---

**PLAINTIFF'S UNOPPOSED MOTION FOR
FLSA COLLECTIVE ACTION SETTLEMENT**

---

Plaintiff, Shawn Ornelas, individually and on behalf of all others similarly situated, and Defendant American Disposal Services of Colorado, Inc. ("ADS"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona fide* dispute, is fair and equitable to all parties concerned, and contains a reasonable award of attorneys' fees.

Plaintiff Ornelas respectfully requests that the Court issue an order: (1) approving the settlement as set forth in Confidential Settlement Agreement and Release of Claims ("Agreement");[1] (2) approving the proposed Notice(s) of Settlement (attached as Exhibits A and B of the Agreement) and directing its distribution, and subsequent distribution of the settlement proceeds in accordance with the Agreement,; (3) approving a service award to lead Plaintiff Shawn Ornelas; (4) approving

---

[1] The Agreement is attached to the Parties Motion for Leave to File Confidential Settlement Agreement Under Seal.

Plaintiff's request for attorneys' fees, costs, and expenses; and (5) dismissing this Lawsuit with Prejudice.

# I.
# BACKGROUND

## A.    Factual Allegations

ADS provides waste disposal services to its clients throughout the State of Colorado. Plaintiff Ornelas was a waste disposal driver who worked for ADS in Denver, Colorado from February 2018 through June 2018. *See* ECF No. 1. Plaintiff alleges that ADS violated the FLSA by artificially "capping" his (and others similarly situated) overtime at (or about) fifty-five (55) hours and that they were not paid for any hours worked over the cap—despite allegedly working in excess of fifty-five (55) hours on a weekly basis. *See id.* Plaintiff further alleges that this alleged policy applied to other similarly situated employees working for ADS in Colorado.  ADS denies any liability to Plaintiff Ornelas, other opt-in Plaintiffs that subsequently joined the litigation, and the putative collective members for any unpaid back wages or overtime and asserts that its hourly, non-exempt waste disposal drivers were fully and properly compensated under federal and state law.  ADS further alleges that most of the putative collective members, if they joined the litigation, could be compelled to mandatory individual (non-collective) arbitration.

## B.    Overview of Litigation

On February 1, 2019, Plaintiff filed this lawsuit on behalf of himself and other waste disposal drivers alleging violations of the FLSA, the Colorado Wage Claim Act ("CWCA"), C.R.S. §§ 8-4-101, *et seq.*, and the Colorado Minimum Wage Act ("CMWA"), C.R.S. § 8-6-101, et seq., as implemented by the Colorado Minimum Wage Order (the CWCA and the CMWA will be referred to collectively as the "Colorado Acts"). Defendant subsequently answered the lawsuit and denied liability and asserted numerous affirmative defenses. *See* ECF No. 8.  The Parties then filed their Proposed Scheduling Order with the Court and exchanged their initial disclosures. *See* ECF No. 15.

Plaintiff initially filed his Opposed Motion for Conditional Certification in this matter. *See* ECF No. 21. After the filing of Plaintiff's certification motion, the Parties again conferred in an effort to reach an agreement on the issue of conditional certification. The Parties thereafter stipulated to the conditional certification of an FLSA collective action that included certain workers not subject to mandatory individual (non-collective) arbitration. *See* ECF No. 23. However, before sending the agreed notice to the putative FLSA collective members, the Parties agreed mediate this matter in good faith. To facilitate a successful mediation, and in conjunction with the stipulation for conditional certification, the Parties further agreed to seek a stay of the pending action—a stay this Court granted on June 4, 2019. *See* ECF No. 26

In preparation for mediation, the Parties engaged in informal document production and openly shared information about the putative collective members so that Plaintiff's counsel could meaningfully evaluate Plaintiff's and the putative collective members claims. Thereafter, on October 17, 2019, the Parties mediated with respected wage and hour mediator, Dennis Clifford, in Houston, Texas. On October 24, 2019, the Parties filed their Joint Status Report and Notice of Settlement with this Court, advising the Court that they had reached an agreement to resolve this matter. *See* ECF No. 33. Notably, the Parties agreed to send a "Settlement Notice" to those individuals subject to the defined collective action. The terms of that Agreement are discussed below.

## II.
## SETTLEMENT TERMS

### A.    Settlement Amount & Allocation

Under the terms of the Settlement Agreement, Defendants have agreed to pay a sum certain ("Gross Settlement Fund") to fully resolve this litigation.[2] Each Plaintiff's *pro rata* share of the

---

[2] Included in the Gross Settlement Fund is Class Counsel's attorneys' fees and out-of-pocket expenses, settlement administration costs, and a service award for the Named Plaintiff. The remaining funds, after the above described deductions, shall constitute the Net Settlement Fund

settlement fund will be calculated based upon the number of workweeks that he or she worked for ADS as a waste disposal driver during the relevant period of recovery. The calculations will be performed as follows:

(1) The Parties will agree on the total number of workweeks for each Collective Member during the relevant time period;

(2) The Settlement Administrator will divide the Net Settlement Fund by the total number of workweeks worked by all Collective Members during the Relevant Period to determine the "Weekly Value";

(3) The Settlement Administrator will multiply the number of weeks worked by each Collective Member by the Weekly Value to obtain each Collective Member's share of the Net Settlement Fund.

The Agreement further provides that fifty percent (50%) of all payments constitute wages and will accordingly be subject to W-2 reporting. Withholdings and normal payroll taxes will be deducted pursuant to state and federal law from this amount.[3] The Parties further agree that the remaining fifty percent (50%) constitutes payment for liquidated damages, prejudgment interest, and penalties, and will be reported on an IRS Form 1099.

In exchange for their share of the settlement fund, each Plaintiff will agree to release their wage-related claims against Defendant. *See* Exhibits A & B to the Settlement Agreement. The Parties have submitted two separate Notices of Settlement—one for those individuals who have already opted-in to this litigation (Exhibit A to the Settlement Agreement) and one for those individuals learning about this lawsuit, and settlement, for the first time (Exhibit B to the Settlement Agreement). The Parties agree that both Notices are informative, provide the necessary information about the lawsuit, the claims alleged, the release, and the process to follow to participate. Those individuals who have already opted-in to this lawsuit will receive their *pro rata* portion of the settlement funds with the

---

[3] The employer portion of all such payroll taxes and withholdings are excluded from the gross settlement fund.

Notice of Settlement. The putative collective members will receive their portion of the settlement funds after agreeing to become a party-plaintiff by returning their opt-in consent form.

**B.      Service Award**

In addition to his payment under the allocation formula described above, and in recognition of the services rendered in the litigation, Plaintiff's Counsel negotiated a service award for Plaintiff Shawn Ornelas. The amount is well within the range of service awards approved by courts in the Tenth Circuit. *See, e.g., Thompson*, 2018 WL 2183988, at *3 ("[R]easonable incentive payments have become common for class representatives, and . . . for FLSA named plaintiffs as well" and approving a $5,000 incentive award to the named plaintiff who "attached his name to [the] federal lawsuit, making the public and his future employers aware that he filed suit against his former employer" (citations and internal quotation marks omitted)); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (approving $7,500 service payment and collecting cases). In light of his efforts that resulted in a settlement on behalf of the Plaintiff, Opt-In Plaintiffs, and other putative collective members that choose to join the settlement, this modest award is reasonable.

**C.      Attorneys' Fees and Litigation Costs**

Of the Gross Settlement Fund, Plaintiff's Counsel seeks to recover its attorneys' fees and litigation expenses. The amount is fair and reasonable and will be addressed in greater detail via a separate motion and as identified in the Parties' settlement agreement, filed under seal. ADS does not contest the amount Plaintiff's Counsel seeks in Fees and Expenses.

**III.**
**ARGUMENT**

**A.      The Court Should Approve the Settlement**

The Parties seek approval of a settlement under section 216(b) of the FLSA. When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."

*Lynn's Food Stores* v. *United States,* 679 F.2d 1350, 1353, 1355 (11th Cir. 1982). In this district, courts typically approve a proposed FLSA settlement after the parties show that: "(1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Thompson v. Qwest Corp.*, No. 17-cv-1745, 2018 WL 2183988, at *2 (D. Colo. May 11, 2018) (quoting *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-1649, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014). This settlement meets all three of these requirements.

### 1. There is a *Bona Fide* Dispute

The Agreement resolves a *bona fide* dispute. ADS provides waste disposal services to its clients throughout the State of Colorado. Plaintiff Ornelas was a waste disposal driver who worked for ADS in Denver, Colorado from February 2018 through June 2018. *See* ECF No. 1. Plaintiff alleges that ADS violated the FLSA by artificially "capping" his (and others similarly situated) overtime at (or about) fifty-five (55) hours and that they were not paid for any hours worked over the cap—despite allegedly working in excess of fifty-five (55) hours on a weekly basis. *See id.* Plaintiff further alleges that this alleged policy applied to other similarly situated employees working for ADS in Colorado.

Plaintiff further contends that he received non-discretionary bonuses that were not included in his regular rate for the purpose of overtime compensation. *See id.* Defendant denies Plaintiff's contentions and further asserts that Plaintiff Ornelas, the Opt-In Plaintiffs, and the putative collective members were properly paid for all of their hours worked. Defendant further challenges the number of hours that Plaintiff claims he worked.

Defendant disputes that it violated the FLSA. For one, Defendant previously received advice from its former labor counsel opining that its pay practices were legal and authorized under the FLSA. Defendant further relies on the United States Department of Labor that its pay practices conformed

with the FLSA. Thus, Defendant vehemently disputes whether liquidated damages or state law penalties are available to Plaintiff and the putative collective members.

Moreover, Defendant contends that the time and payroll records properly reflect that Defendant paid for all hours worked, including all hours worked in excess of 40 hours in a workweek.. Defendant asserts that Plaintiff recorded all hours worked in a workweek, such hours were properly paid under the FLSA, and hours were not subject to an alleged "cap." Further, Defendant disputes that the overtime payments were miscalculated, and, instead, Defendant contends that all daily premiums were properly included in its calculations of the regular rate of pay and no additional payments are due to Plaintiff and/or the putative collective members.

If Plaintiff's allegations were ultimately proven correct, even for limited time period during the relevant window of recovery, Defendant would be faced with the prospect of a monetary judgment in favor of Plaintiff, as well as an obligation to pay litigation fees and costs incurred by Plaintiff. If Defendant's arguments were correct, then Plaintiff would recover no money, and possibly be required to pay Defendant's costs. The parties on both sides were represented by able counsel throughout this litigation.

Further, approximately 57% of the putative collective is likely subject to mandatory individual (non-collective) arbitration which could result in years of arbitration to secure individual awards for each member of the collective. Accordingly, the Court should readily conclude that a *bona fide* dispute between the Parties existed under the FLSA.

2.  The Proposed Settlement is Fair and Reasonable

To proposed Agreement is fair and reasonable to all parties. "To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales." *Manohar v. Sugar Food LLC*, No. 16-cv-2454, 2017 WL 3173451, at *3 (D. Colo. July 26, 2017). Here, the Agreement provides Plaintiff, the Opt-In Plaintiffs and the putative

collective members with adequate compensation for their claims, given the risks present. Courts in the Tenth Circuit regularly look to the fairness factors applied to a proposed collective action settlement under Federal Rule of Civil Procedure 23(e). *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-1884, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013). These factors include: (1) whether the settlement was fairly and honestly negotiated, (2) whether questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable. *See id.* The proposed Agreement satisfies all of these factors.

Here, the Agreement was formally negotiated during an arms-length mediation with respected wage and hour mediator, Dennis Clifford. The use of a mediator weighs against a finding of collusion. *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Molycorp, Inc. Sec. Litig.*, No. 12 Civ. 292, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved" and collecting cases); *Fulton v. TLC Lawn Care, Inc.*, No. 10 Civ. 2645, 2012 WL 1788140, at *4 (D. Kan. May 17, 2012) (finding no evidence of fraud or collusion where parties reached an FLSA settlement with the aid of "an experienced labor-and-employment-law mediator"); *Hobbs v. Tandem Envtl. Solutions*, No. 10 Civ. 1204, 2012 WL 4747166, at *3 (D. Kan. Oct. 4, 2012) (same).

Moreover, there exist disputed questions of law and fact that render ultimate success, for either side, uncertain. Both Parties recognize that Defendant utilized a complex compensation scheme to calculate the wages of its non-exempt waste disposal drivers. However, the Parties hotly dispute whether the compensation scheme was appropriate under the FLSA. In addition to the propriety of

Defendant's compensation scheme, additional questions involving the statute of limitations and the ability of Plaintiff to carry his burden to show that the three-year statute should apply. *See* 29 U.S.C. § 255(a). Defendant has also asserted that in the event a violation of the FLSA is found, that Defendant acted at all times in good faith, including upon previous advice of labor counsel, thereby seeking to negate the application of liquidated damages. Importantly, over half of the putative collective members have allegedly signed arbitration agreements that would prevent them from participating in this lawsuit and would likely force them to bring their claims individually in the arbitral forum. The Agreement, however, also provides for their recovery irrespective of the arbitration agreements.

Although Plaintiff believes his case is strong, it is subject to the considerable risk that is inherent in litigation. "The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility no recover after long and expensive litigation." *In re Qwest Comms. Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Here, a trial on the merits would involve significant risk as to both liability and damages. Plaintiff would have to establish that the pay scheme at issue failed to compensate him at time and a half for all hours worked over forty in a given workweek. Plaintiff would also have to prove willfulness to obtain a third year of liability damages. Because Defendant changed the pay plan at issue, before Plaintiff instituted this litigation, the amount of time subject to recovery is truncated. Defendant no longer utilizes the pay plan and/or practice that gave rise to the claims in this litigation. Plaintiff's Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Agreement alleviates these uncertainties and provides for immediate (and meaningful) recovery instead of the mere possibility of future relief after protracted litigation.

Moreover, the pay practice that is the subject of this litigation is no longer utilized by Defendant and has not been utilized by Defendant since December 2018. Thus, many of the putative

collective members were subject to the pay practice years ago, making the applicable statute of limitations significantly important to the resolution of their claims and potential recovery. This is especially true given the contested applicability of liquidated damages and whether a two or three year statute of limitations will apply. This agreement, thus, brings immediate and substantial compensation to the putative collective members without the need for lengthy litigation or arbitration.

Additionally, to date, no other "similarly situated employees" have sought to join this action, and there is no allegation that Defendant's alleged failure to comply with the FLSA represents a continuing violation or is part of widespread conduct. This is especially true given that the underlying pay practice has not been utilized by the Company in over two years.

Moreover, the endorsement of a proposed FLSA settlement by both parties is a "factor that weighs in favor of approval" because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation." *Quintanilla* v. *A&R Demolition, Inc.,* No. CIV.A. H-04-1965, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008). "In evaluating the settlement, the Court [ ] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Secs. Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002); *see also Whittington* v. *Taco Bell of Am., Inc.,* No. 10-cv-01884, 2013 WL 6022972 (D. Colo. Nov. 13, 2013). Here, both Parties believe the proposed Agreement is a fair and reasonable resolution of the claims.

**B.  The Request for Attorneys' Fees and Costs is Reasonable**

Plaintiff is requesting that this Court approve Plaintiff's counsel's attorneys' fees and costs as outlined in the Confidential Settlement Agreement. Plaintiff is seeking a contingency payment of 40% of the settlement fund for its fees and costs. *See Vaszlavik v. Storage Technology Corp.,* Civ. No. 95-B-2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the

ordinary 20%–50% range and is presumptively reasonable."); *see also, e.g.*, *Whittington*, 2013 WL 6022972, at *5–*6 (approving a contingency fee and expense award totaling 39% of the total fund); *Howard v. J&A Services, L.L.C.,* Case No. 1:12-cv-02987-RM-MJW, Docket Nos. 89 and 96 (D. Colo.) (Judge Moore awarding 40% contingency fee plus litigation expenses in FLSA collective action); *Construction, Inc. v. National Council on Compensation*, 1993 WL 355466, at *2 (W.D. Okla. 1993) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis"). Here, both Parties believe the proposed request for attorneys' fees and costs is fair and reasonable.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order approving the settlement as fair and reasonable as set forth in the Agreement, approving the proposed Notice(s) and directing its distribution, approving the service award to Plaintiff Shawn Ornelas, and (4) approving Plaintiff's request for Fees and Expenses, and dismissing this lawsuit with prejudice.

Date: January 28, 2020                    Respectfully Submitted,

**ANDERSON ALEXANDER, PLLC**

By:    */s/ Clif Alexander*
        Clif Alexander
        clif@a2xlaw.com
        Lauren E. Braddy
        lauren@a2xlaw.com
        819 N. Upper Broadway
        Corpus Christi, Texas 78401
        Telephone: (361) 452-1279
        Facsimile: (361) 452-1284

**THE LAW OFFICES OF BRIAN D. GONZALES**

Brian D. Gonzalez
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528

Telephone: (970) 214-0562
BGonzales@ColoradoWageLaw.com

**_Attorneys for Plaintiff, Opt-in Plaintiffs and_**
**_Putative Collective Members_**

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I have conferred with Defendant's counsel of record and they are unopposed to the filing of this Motion and the relief requested herein.

_/s/ Clif Alexander_
Clif Alexander

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 28, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, District of Colorado, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

_/s/ Clif Alexander_
Clif Alexander